IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CYPRESS ENGINE ACCESSORIES, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-15-2227 |
| HDMS LIMITED COMPANY, d/b/a PREMIUM POWER SOLUTIONS, *et al.*, | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Cypress Engine Accessories, LLC, purchased prechambers, an engine part, from HDMS. These prechambers were allegedly manufactured by Powertech Marine.[1] A dispute arose when Cypress Engine contended that the prechambers it purchased from HDMS were defective. Cypress Engine and HDMS negotiated a settlement under which Cypress Engine would return the prechambers it had purchased on a set schedule, and HDMS would repay the purchase price less a restocking fee. The negotiations were through emails that resulted in a signed one-page document the writer described as the "outline" of the parties' settlement agreement.

Cypress Engine had not paid past-due invoices on unrelated purchases from HDMS. HDMS deducted this past-due amount from the amount it owed under the settlement agreement for the prechambers that Cypress Engine returned. Cypress Engine sued HDMS, alleging that it had breached the settlement agreement by taking the offset. HDMS counterclaimed, alleging that Cypress Engine had materially breached the settlement agreement earlier. As part of the settlement, Cypress Engine agreed not to engage in business activities associated with prechambers during the time it was

---

[1] Powertech Marine disputes whether it manufactured the prechambers. (Docket Entry No. 54). Powertech Marine's role in this dispute is not at issue at this phase in the case. *See* Section IV.

returning, and being reimbursed for, the prechambers it had purchased from HDMS. HDMS intended to refurbish the prechambers returned from Cypress Engine and resell them. Within days of signing the settlement agreement, however, Cypress Engine was selling refurbished prechambers. HDMS's counterclaim was for this alleged breach of the settlement agreement.

Based on a careful review of the motions, responses, and replies; the record; the relevant law; and the arguments of counsel, the court grants HDMS's motion for summary judgment, (Docket Entry No. 53); denies Powertech Marine's motion for summary judgment without prejudice and with leave to reurge, (Docket Entry No. 54); denies Cypress Engine's cross-motion for summary judgment, (Docket Entry No. 55); denies Cypress Engine's motion for leave to amend its answer, (Docket Entry No. 59); and grants HDMS's motion to strike Cypress Engine's amended answer, (Docket Entry No. 52). A status conference is set for **May 17, 2017** at 11:00 a.m. Counsel are ordered to attend and to bring a representative of their clients to the status conference.

The reasons for these rulings are set out below.

## I.     Background[2]

---

[2] The summary judgment evidence includes internal Cypress Engine emails (Docket Entry No. 53, Exs. 7, 10, 18, 29, 30, 38, 43, 54, 56, 57, 60, 61, 69, 70, 72, 73, 74, G, H, I, J, R; Docket Entry No. 60, Ex. 9; 35): internal HDMS communications (Docket Entry No. 60, Ex. U); emails between HDMS and Cypress Engine (Docket Entry No. 53, Exs. 22, 23, 25, 34, 37, F, K, L, M, N, O, Q; Docket Entry No. 60; Ex. 26); the Distributor Agreement between Cypress Engine and HDMS (Docket Entry No. 55, Ex. A); documents related to the settlement agreement and negotiations (Docket Entry No. 53, Exs. 27, A, E, P; Docket Entry No. 55, Ex. B-1, B-2); various other emails (Docket Entry No. 53, Exs. 58, 62); documents generated during this litigation (Docket Entry No. 60, Exs. V, W; Docket Entry No. 53, Ex. D); and documents showing Cypress Engine's and Downin's Engines sales (Docket Entry No. 53, Exs. 59, 68, 71, 75, ). The evidence also includes deposition excerpts from Shawn Bailes, the designated representative of Cypress Engine (Docket Entry No. 53, Ex. B; Docket Entry No. 60; Ex. T); Jon Yaunke, another designated representative of Cypress Engine (Docket Entry No. 53, Ex. C; Docket Entry No. 60; Ex. S); Tracy Northington, a consulting expert retained by Cypress Engine (Docket Entry No. 55, Ex. C); George Robert Erickson, HDMS's representative (Docket Entry No. 55, Ex. D; Docket Entry No. 60, Ex. X). The record also includes an affidavit from Jon Yaunke, Cypress Engine's representative. (Docket Entry No. 55, Ex. B; Docket Entry No. 56, Ex. 2).

Cypress Engine and HDMS entered into a Distributor Agreement on February 16, 2012. (Docket Entry No. 55, Ex. A). Under that Agreement, Cypress Engine bought engine parts and accessories from HDMS, and Cypress Engine resold them to its customers. (*Id.*). The parts included prechambers. In 2013, Cypress Engine claimed that the prechambers it purchased from HDMS were defective. (Docket Entry No. 53, Ex. E).

HDMS and Cypress Engine engaged in settlement discussions through letters and emails. Shawn Bailes, a "financial representative of the owners of Cypress Engine" and its wholly owned subsidiary, Downin's Engines, acting as their designated representative, handled the negotiations on Cypress Engine's behalf. On February 25, 2014 and again on March 7, 2014, Bailes sent a letter to HDMS. In the letters, Bailes acknowledged the dispute, offered to settle if HDMS paid $300,000, and threatened to refer the matter to legal counsel if no settlement was reached. (*Id.*, Ex. A at 1–3; Ex. 10; Ex. B at 82, 107). During the next few weeks, the parties exchanged emails negotiating what became the settlement agreement. (*Id.*, Ex. A). Among other things, the emails stated the parties' intent to have the settlement agreement resolve the "entire issue" between the parties. (*Id.*, Ex. A at 8).

The exchanges ended with an email attaching what was described as an outline of the offer and acceptance constituting the parties' agreement. Bailes wrote in a March 21, 2014 email: "The offer and acceptance outlined in this email string constitutes agreement between [HDMS] and Cypress Engine on the return quantities, prices, and timetable." (*Id.*, Ex. A at 14). Attached to that email was a one-page outline of the settlement agreement. The parties signed a hard copy of the outline the same day. (*Id.*, Exs. A at 14, F).

Under the agreement, Cypress Engine would return the 243 new prechambers it had

3

purchased under a schedule that the parties negotiated, and the emails and letters proposed that HDMS would pay Cypress Engine the full purchase price less a restocking fee. (*Id.*, Ex. A at 11–12). Cypress Engine also agreed that "[a]ny amounts due to [HDMS] related to other materials will be honored." (*Id.*, Ex. A at 12). HDMS included a requirement that Cypress Engine not "engage, partner, and or enter into any agreement associated with the prechamber, prechamber manufacturing, prechamber testing, and or prechamber design" during the scheduled period for returning the prechambers. (*Id.*, Ex. A at 14).

Between March 21 and May 2014, HDMS sent Cypress Engine two reminder invoices for past-due amounts it owed for purchases unrelated to the prechambers. (*Id.*, Exs. K, L). In May 2014, when it was time for HDMS to pay what it owed under the settlement agreement prechamber return-and-reimbursement schedule, HDMS deducted the amount that Cypress Engine owed on the unrelated purchases from the amount that HDMS owed under the settlement agreement. (*Id.*, Ex. M). After receiving the payment, with the reduction for the offset, HDMS and Cypress Engine continued to perform under the settlement agreement. Cypress Engine sent prechambers back on schedule. HDMS sent the money it owed for the returned prechambers on schedule as well.

HDMS did not know that six days after the parties signed the settlement agreement in March 2014, Cypress Engine was back in the business of selling prechambers. Cypress Engine used a different supplier—not HDMS—to provide it refurbished prechambers, which it sold to its own customers. (*Id.*, Ex. 62; Ex. C at 101–102). Between March 21, 2014 and August 31, 2014, Cypress Engine sold 46 refurbished prechambers, for a total of $72,900, and it sold six prechamber seal kits for a total of $783. (*Id.*, Ex. 68; Ex. C at 176–82). Cypress Engine's wholly owned subsidiary, Downin's Engines, sold 4 prechambers for a total of $6,400. (*Id.*, Ex. 75; Ex. C at

4

185–86, 234–37). During this period, Cypress Engine actively marketed and quoted prechambers and prechamber parts to its customers and potential customers. (*Id.*, Exs. 58, 59, 71, 72, 73, 74; Ex. C at 188, 205–207, 220–22).

In August 2014, HDMS learned that Cypress Engine had continued to sell prechambers after the parties signed the settlement agreement. HDMS sent Cypress Engine a letter stating that its prechamber sales during the period covered by the settlement agreement violated the agreement, and that as a result, the agreement was no longer in effect. (*Id.*, Ex. 34). Cypress Engine responded by complaining for the first time about the May 2014 offset. Cypress Engine also denied that it was selling refurbished prechambers, asserting that Downin's Engines was the only entity doing so. (*Id.*, Ex. 37). This argument was curious, given Cypress Engine's stipulation that, for the purposes of the settlement agreement, its actions and the actions of Downin's Engine, its wholly owned subsidiary, "are the same." (Docket Entry No. 53, Ex. D).

Cypress Engine sued, alleging that HDMS had breached the settlement agreement by taking the offset, and had breached warranties and violated the DTPA by selling defective prechambers. (Docket Entry No. 20). Cypress Engine also asserted claims against the alleged prechamber manufacturer, Powertech Marine. (*Id.*). HDMS counterclaimed for, among other things, breach of the settlement agreement's provisions preventing Cypress Engine from selling prechambers during the return-and-reimbursement period. (Docket Entry No. 35). These motions followed discovery conducted by both Cypress Engine and HDMS. Each motion is analyzed below.

1. **The Legal Standards**

    a. **The Summary Judgment Standard**

    "Summary judgment is required when 'the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond

the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (alteration omitted) (quotation marks omitted).

### B. The Standard for Leave to File an Amended Answer

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires." Fed. R. CIV. P. 15(a)(2). "[T]he language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir.2005) (internal quotation marks omitted). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Id.* (internal quotation marks omitted). Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). "[T]he same standard of legal sufficiency as applies under Rule 12(b)(6)" applies to determining futility. *Id.* (internal quotation marks omitted).

## III. HDMS's and Cypress Engine's Cross-Motions for Summary Judgment

Although HDMS counterclaimed against Cypress Engine, HDMS's summary judgment motion is limited to Cypress Engine's claims for breach of contract, breach of warranty, and DTPA violations.[3] Cypress Engine's cross-motion for summary judgment is limited to its breach-of-contract claims against HDMS based on the offset.

### A. The Cross-Motions for Summary Judgment on Cypress Engine's Breach-of-Contract Claim Based on the Offset

Cypress Engine alleged that HDMS breached the settlement agreement by offsetting the amounts Cypress Engine owed on unrelated overdue invoices against the amount HDMS owed for the returned prechambers. HDMS responded that the offset did not breach the settlement agreement because that agreement required Cypress Engine to pay the amounts it owed HDMS even if they were unrelated to the prechamber purchase.

One complication is that while HDMS and Cypress Engine agree that they had a valid settlement agreement, they disagree about what it consists of. The letters and emails they sent

---

[3] In its summary judgment motion, HDMS reserved the right to later move for summary judgment on its counterclaims. (Docket Entry No. 53 at 8 n.2). Those remaining counterclaims will be addressed at the status conference scheduled by this Order.

negotiating the agreement culminated in the March 21, 2014 email from Shawn Bailes, Cypress Engine's representative, stating:

> "The offer and acceptance outlined in this email string constitutes agreement between [HDMS] and Cypress Engine on the return quantities, prices, and timetable."

(Docket Entry No. 53, Ex. A at 14). A one-page attachment to that email was characterized in the email string as "accurately summariz[ing]" the agreement between the two parties. (*Id.*). The first line of that one-page document states:

> "This agreement outlines the terms and conditions of the return of 2-piece pre-chamber assemblies from Cypress Engine Accessories [] to [HDMS]."

(*Id.*, Ex. F). HDMS argues that the one-page attachment outlining the email string plus the emails constitute the parties' agreement. Cypress Engine argues that only the one-page outline attached to the email string, and not the email string that preceded and transmitted it, constitutes the settlement agreement.

Cypress Engine relies on the merger or integration doctrine to support its argument that only the one-page outline is the parties' settlement agreement. None of the documents—not the outline or the prior emails— has a merger or integration clause. Cypress Engine cannot draw on the parties' express language to limit the settlement agreement to the one-page outline.

Under federal and Texas law, a court may look to extrinsic evidence to determine whether a writing is a complete expression of the parties' agreement and therefore a partially or fully integrated agreement. *See The York Grp., Inc. v. Horizon Casket Grp., Inc.*, Civ. No. 05-2181, 2007 WL 2021763, at *4 (S.D. Tex. July 11, 2007) (quoting *Pennzoil Co. v. F.E.R.C.*, 645 F.2d 360, 388 (5th Cir. 1981). There is no indication in the email string or the one-page outline that the outline, standing alone, was intended to be the parties' fully integrated agreement. Cypress Engine neither

points to nor submits record evidence that the parties intended the outline attached to the last email Bailes sent to be a stand-alone fully integrated contract. 49 TEXAS PRACTICE: CONTRACT LAW § 8.3 (2006) ("If the parties intend for the written contract to be the final and complete expression of their agreement, the contract is integrated."). Bailes presented the one-page attachment as "summarizing" the terms the parties had agreed to in the email string. (Docket Entry No. 53, Ex. A at 14). Bailes attached the outline to an email stating that "[t]he offer and acceptance outlined in this email string constitutes agreement between [HDMS] and Cypress Engine on the return quantities, prices, and timetable." (*Id.*). The most reasonable way to construe the email string and the one-page outline is that together they constitute the settlement agreement.

Having identified the agreement, the next issue is whether HDMS's offset breached it. In the email string, Bailes states that Cypress Engine agreed to honor its past-due debts to HDMS. The email stated that "[a]ny amounts due to [HDMS] related to other materials will be honored." (Docket Entry No. 53, Ex. A at 12). No term in the settlement agreement prohibited HDMS from offsetting the amount it owed Cypress Engine for the returned prechambers by the amount Cypress Engine owed for unrelated materials purchased from HDMS.

Even if the court accepted Cypress Engine's argument that the one-page outline standing alone was the entire settlement agreement, the record does not support an inference that HDMS breached the agreement by taking the offset. The last sentence of the outline states: "[t]he return schedule is irrespective of any prior credit extended to [Cypress Engine] or unrelated material purchases and returns." (*Id.*, Ex. F). The outline makes clear that the parties did not intend to condition Cypress Engine's obligation to pay HDMS for the unrelated items on HDMS first reimbursing Cypress Engine for the returned prechambers. Nor did the parties intend to make

10

HDMS's ability to enforce its right to require Cypress Engine to pay the outstanding invoices for unrelated purchases depend on HDMS first paying Cypress Engine the amounts owed for the returned prechambers. Cypress Engine breached the settlement agreement by failing to pay what it owed for the unrelated purchases. HDMS did not breach the agreement by offsetting its payment for the prechambers Cypress Engine returned by the amount Cypress Engine had failed to pay.

Although the settlement agreement is not ambiguous, the court notes that if it was, the result would not change. The extrinsic evidence includes emails from a Cypress Engine employee asking Bailes what the last sentence in the one-page outline meant. The employee stated: "I read [that line in the settlement agreement] as [that HDMS] should stick with the Buy Back Agreement payment schedule regardless of what we may or may not owe them." (Docket Entry No. 53, Ex. 29). Bailes responded: "The way the agreement was worded (as I wrote it) is that the return amounts were irrespective of previous credits related to 2-piece pre-chambers. So, if we owed them anything on non-pre-chamber materials (2pc) we would honor that debt but to my knowledge that was a minimal amount." (*Id.*). Bailes clearly states that, consistent with the settlement agreement, Cypress Engine agreed to pay HDMS any outstanding amounts, including amounts for purchases unrelated to the prechambers.

Cypress Engine's belief that the amount it owed HDMS was minimal arose because one of its employees had failed to enter bills from HDMS into Cypress Engine's accounting software. (*Id.*, Ex. 30). After receiving notice of the past-due amounts from HDMS, Cypress Engine verified that the amounts were "legit[imate]." (*Id.*). After the offset, and after Cypress Engine verified that it had failed to pay because of an internal error, Bailes stated that "ignoring valid invoices unrelated to the pre-chamber issue [was] a gross mistake on our part" and that the offset "will be a difficult pill to

11

swallow, but I will try to explain it to our management here." (*Id.*). Bailes agreed to pay the invoices even after he knew the amount was not "minimal."

Cypress Engine's motion faces an added problem. The uncontroverted record evidence shows that, as a matter of law, Cypress Engine waived its right to assert HDMS's offset as a breach of the settlement agreement. Waiver is the intentional relinquishment of a known right. It can be express or indicated by conduct that is inconsistent with an intent to claim the asserted right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Bailes agreed that Cypress Engine "gave up [the] right to complain" about the offset by voluntarily proceeding under the agreement after HDMS took the offset and choosing not to dispute it. (Docket Entry No. 53, Ex. B at 317). Bailes explained that after learning of the offset, he chose to "keep the agreement alive by not complaining." (*Id.*). The first time that Cypress Engine made a complaint about the offset was *after* HDMS sent the August 2014 email notifying Cypress Engine that the settlement agreement was void because Cypress Engine had breached it by continuing to sell prechambers. Bailes described his complaint about the offset as Cypress Engine "tr[ying] to fire back with some complaints of [its] own." (*Id.*, Ex. 38).

Cypress Engine responds that it did not waive its right to assert the offset as a breach because HDMS "points only to the acceptance of partial payment as its only evidence of waiver." (Docket Entry No. 56 at 13). HDMS supported its waiver argument with more than just continued performance. HDMS also provided uncontroverted summary judgment evidence in the form of Bailes's statements that he intended to overlook the offset and instead continue the parties' business relationship. The evidence shows that, as a matter of law, Cypress Engine waived its right to contest the validity of the offset or to assert it as a breach. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781,

12

790–91 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, the question becomes one of law."); *see also First Interstate Bank of Ariz., N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) ("[T]he issue of waiver becomes a matter of law only where material facts and circumstances are undisputed or clearly established and there is no room for argument or inference.").

HDMS also asserts that even if it breached the contract by taking the offset from its May 2014 payment, Cypress Engine had materially breached the contract first by continuing to sell prechambers, excusing HDMS from continued performance. The email string includes the following request from HDMS: "[HDMS] and the manufacturer would also like the assurance that Cypress will not engage, partner, and or enter into any agreement associated with the prechamber, prechamber manufacturing, prechamber testing, and or prechamber design. Outside of [HDMS] for the duration of the buy back agreement." (*Id.*, Ex. A at 14). The outline the parties signed contains this term as a contract requirement: "[Cypress Engine] agrees not to engage in any pre-chamber partnerships with outside entities while the return process is incomplete." (*Id.*, Ex. F).

While a material breach excuses the nonbreaching party from continued performance, *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004), if a breach is immaterial, "the nonbreaching party is not excused from future performance but may sue for the damages caused by the breach." *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 654 (Tex. App.—Houston [1st Dist.] 2014, pet. filed). HDMS presents uncontroverted record evidence that Cypress Engine's prechambers sales were a material breach. HDMS proposed the term because it intended to refurbish the prechambers Cypress Engine returned and resell them. (Docket Entry No. 53, Ex. 23; Docket Entry No. 60, Ex. S at 88–89). HDMS did not want to

13

compete with Cypress Engine while it tried to sell the refurbished prechambers. (Docket Entry No. 53, Ex. 23). HDMS presents undisputed summary judgment evidence that Cypress Engine tried to conceal its competing prechamber sales during this period by telling HDMS that only Downin's Engines, not Cypress Engine, was selling prechambers; the evidence shows that this was false, as well as irrelevant. (Docket Entry No. 60, Ex. 35; Docket Entry No. 53, Ex. C at 188). Cypress Engine also took steps to ensure that one of its customers would not tell HDMS that Cypress Engine was getting refurbished prechambers from another supplier and reselling them during the period covered by the settlement agreement. (Docket Entry No. 53, Ex. I). The uncontroverted record evidence shows that even if HDMS breached the contract, Cypress Engine materially breached the contract first, excusing HDMS's continued performance.

HDMS's summary judgment motion on Cypress Engine's breach-of-contract claim is granted, and Cypress Engine's cross-motion is denied.

**B.     Cypress Engine's Breach-of-Warranty and DTPA Claims**

HDMS contends that the settlement agreement extinguished Cypress Engine's claims relating to the defective prechambers. Cypress Engine has not responded to this argument. In the emails the parties exchanged, Bailes wrote that Cypress Engine intended the settlement agreement to "settle the entire issue by returning" the prechambers Cypress Engine had purchased to HDMS in exchange for a refund. (Docket Entry No. 53, Ex. A at 8) (emphasis in original).

A compromise and settlement agreement "is the conclusion of a disputed or unliquidated claim through a contract in which the parties agree to mutual concessions in order to avoid resolving their controversy through litigation." *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 388 (Tex. App.—San Antonio 1990, writ denied); *see also Miller v. Republic Nat'l Life Ins. Co.*, 559

14

F.2d 426, 428 (5th Cir. 1977) (settlement agreements "are a means of amicably resolving doubts and preventing lawsuits"). When parties enter into a compromise and settlement agreement, the original claim is extinguished and the compromise and settlement agreement operates as an estoppel to a later action asserting obligations or claims that were the subject matter of the settled dispute. *See, e.g., Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 392–93 (Tex. 1993) (an earlier compromise and settlement of a dispute is a valid defense to a subsequent cause of action arising from the dispute); *Baker v. Fed. Exp. Corp.*, 224 S.W.3d 390, 394 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "[S]ettlement agreements, when fairly arrived at and properly entered into, are generally viewed as binding, final and as conclusive of the rights of the parties as is a judgment entered by the court." *Shepherd v. Wells Fargo Bank*, 2016 WL 4435267, at *2 (W.D. Tex. Aug. 19, 2016) (quoting *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986)).

Cypress Engine's amended complaint makes clear that the breach-of-warranty and DTPA claims arise out of its allegation that the prechambers it purchased from HDMS were defective. (*See* Docket Entry No. 20 at 4–6). These claims fall squarely within the "entire issue" that the settlement agreement resolved. Cypress Engine cannot now assert claims it released in its settlement agreement with HDMS. *See, e.g.*, *Shepherd*, 2016 WL 4435267, at *2; *Estate of Pollack*, 858 S.W.2d at 392–93; *Baker*, 224 S.W.3d at 394. HDMS's summary judgment motion on Cypress Engine's breach-of-warranty and DTPA claims is granted.

## IV. Powertech Marine's Summary Judgment Motion

Cypress Engine's allegations against Powertech Marine for allegedly manufacturing the prechambers HDMS sold are not currently at issue. In August 2016, the court limited discovery to whether there was a breach of the settlement agreement between Cypress Engine and HDMS.

15

(Docket Entry No. 28). Following that order, Cypress Engine and Powertech Marine have done no discovery. (*See* Docket Entry No. 58). The record is inadequate to allow the court to decide whether Powertech Marine manufactured prechambers for HDMS or whether they were defective. Powertech Marine's summary judgment motion is denied without prejudice and with leave to reurge after the necessary discovery. (Docket Entry No. 54).

## V.     Cypress Engine's Late-Filed Amended Answer

Cypress Engine filed its first amended answer on December 5, 2016. (Docket Entry No. 45). Cypress Engine's amended pleading was due on November 10, 2016; HDMS's second amended answer and counterclaims were deemed filed on October 27, 2016. (*See* Docket Entry No. 43 at 3); FED. R. CIV. P. 15(a)(3) ("Unless the Court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later"). Cypress Engine did not file a motion for leave to file this answer. HDMS moved to strike the answer as untimely, to which Cypress Engine responded with a motion for leave to file the amended answer. (Docket Entry Nos. 52, 59). HDMS responded. (Docket Entry No. 62).

Cypress Engine's proposed amended answer asserts a new defense—that HDMS did not have the money to pay Cypress Engine under the settlement agreement, and therefore wrongfully took the offset and falsely asserted that Cypress Engine had breached in order to excuse its own nonperformance. (Docket Entry No. 45). As explained above, the undisputed facts show that, as a matter of law, the offset was consistent with the parties' settlement agreement and that Cypress Engine breached the agreement by selling refurbished prechambers during the period it was returning the ones it had purchased to HDMS. And these are not the only problems with Cypress

16

Engine's arguments on its proposed amended answer and newly raised defense.

Cypress Engine contends that it should be granted leave to amend after the deadline for doing so, and after the deadline for discovery, because it did not learn the relevant information about HDMS's finances until after it took depositions at the end of the discovery period. Cypress Engine states that it learned the relevant information during the depositions of Tracy Northington on October 27, 2016 and of Robert Erickson on December 7, 2016.

The record undermines Cypress Engine's explanation. First, Tracy Northington is Cypress Engine's own nonretained expert, and second, the record shows that Cypress Engine knew at least some of this information before Mr. Northington's deposition on October 27. (Docket Entry No. 59 at 3) ("In [] discussion with Mr. Northington prior to his deposition on October 27, 2016, it was learned that he had additional information relative to the contract issue to be litigated."). Even if Cypress Engine did not learn the information about HDMS's financial situation until the October 27 deposition, it could have filed an answer or motion for leave to file by the November 10 deadline.

Nor can Cypress Engine rely on Mr. Erickson's testimony to explain the late filing. Mr. Erickson was deposed on December 7, 2016, two days *after* the amended answer was filed. (Docket Entry No. 59 at 2). During the December 7 deposition, Mr. Erickson refused on advice of counsel to answer questions about HDMS's financial condition around the time that the parties signed the settlement agreement. (Docket Entry No. 59 at 4). Cypress Engine contends that "[t]he obvious conclusion to be drawn from this testimony is that the claims of Cypress are accurate, that HDMS was without funds to pay according to the contract terms . . . ." (*Id.* at 5). Speculating about the reason for the instruction not to answer does not provide a basis for this inference. It seems equally likely that Mr. Erickson was instructed not to answer a question asking for irrelevant information,

17

given that Cypress Engine had not properly asserted HDMS's finances as a defense.

Putting aside the instruction, the December 7 deposition cannot be the reason for the belated amendment. The latest that Cypress Engine knew of HDMS's finances was October 27, the date Mr. Northingon was deposed—two weeks before the deadline for filing an amended pleading. It also appears from Cypress Engine's own summary judgment motion that it was informed as early as February 2014 that HDMS may not have had the funds to pay under the settlement agreement. (Docket Entry No. 55 at ¶¶ 8–9). Cypress Engine has offered no credible reason explaining why it nonetheless filed its amended answer weeks late and failed to seek leave to do so at the time.

The amended answer was filed after discovery closed and two weeks before the summary judgment motions and briefs were due. (*See* Docket Entry Nos. 41, 48). Allowing this amendment would require reopening discovery and preparing new summary judgment motions and briefs. The delay and added burden and expense are prejudicial to HDMS. The Fifth Circuit has approved denying leave to amend in these circumstances. *See Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 131 (5th Cir. 2015) ("This Court and other courts have found prejudice, for instance, if the amendment is asserted after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial."); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming denial of leave to amend where the plaintiff filed the motion "on the eve of the discovery deadline").

Cypress Engine's motion for leave to file its amended answer is denied. (Docket Entry No. 59). HDMS's motion to strike Cypress Engine's answer is granted. (Docket Entry No. 52).

**VI.     Conclusion**

HDMS's motion for summary judgment is granted, (Docket Entry No. 53); Powertech

18

Marine's motion for summary judgment is denied without prejudice and with leave to reurge, (Docket Entry No. 54); Cypress Engine's motion for summary judgment is denied, (Docket Entry No. 55); Cypress Engine's motion for leave to amend its answer is denied, (Docket Entry No. 59); and HDMS's motion to strike the amended answer is granted, (Docket Entry No. 52).

A status conference is set for **May 17, 2017** at 11:00 a.m. Counsel are ordered to attend and to bring a representative of their clients to the status conference.

SIGNED on May 3, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge