**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CYPRESS ENGINE ACCESSORIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2227 |
| | § | |
| HDMS LIMITED COMPANY, d/b/a | § | |
| PREMIUM POWER SOLUTIONS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Three motions are pending:

1.  Cypress Engine's motion for reconsideration of the court's May 3, 2017 Memorandum and Order interpreting the settlement agreement between Cypress Engine and HDMS, (Docket Entry No. 85);

2.  HDMS's motion for summary judgment on its counterclaims against Cypress Engine, (Docket Entry No. 78); and

3.  Powertech Marine's motion for summary judgment on Cypress Engine's claims, (Docket Entry No. 77).

Based on the motions and responses, the record, the arguments of counsel, and the applicable law, the court: denies Cypress Engine's motion for reconsideration; grants in part and denies in part HDMS's motion for summary judgment on its counterclaims, and orders that no later than October 13, 2017, HDMS must submit evidence of the fee amount on the DTPA claim, segregating the fees it seeks for defending the DTPA claim from the other fees it incurred or, in the alternative, that the fees were for claims so interrelated that segregation is not required; and grants Powertech Marine's motion for summary judgment.

The reasons for these rulings are set out below.

**I.      Background**

Cypress Engine purchased prechambers, an engine part, from HDMS. After Cypress Engine alleged that the prechambers were defective, Cypress Engine and HDMS negotiated a settlement under which Cypress Engine would return the prechambers within a certain time frame and HDMS would refund the purchase price, less a restocking fee. The negotiations occurred through a series of emails and a signed one-page "outline" of the settlement agreement.

Cypress Engine had unpaid, past-due invoices from HDMS for transactions unrelated to the prechambers purchases. After the parties signed the settlement agreement, HDMS deducted the past-due invoices from the refunded amounts it paid Cypress Engine for the returned prechambers. Cypress Engine filed this suit against HDMS, alleging that it had breached the settlement agreement by taking the offset. Cypress Engine also sued Powertech Marine, alleging that it manufactured the defective prechambers that HDMS had sold.

HDMS counterclaimed, alleging that Cypress Engine had breached the settlement agreement promise not to engage in competing business activities associated with prechambers during the period Cypress Engine was returning prechambers it had bought from HDMS for a refund. HDMS alleged that within days of signing the settlement agreement, Cypress Engine was selling prechambers. HDMS intended to refurbish the returned prechambers and resell them, which would compete with Cypress Engine's sales. HDMS alleges in its counterclaim that Cypress Engine breached the settlement agreement both by selling the prechambers and by filing this lawsuit asserting claims that Cypress Engine had released in the settlement agreement.

HDMS and Cypress Engine cross-moved for summary judgment. (Docket Entry Nos. 53, 55). HDMS moved for summary judgment dismissing Cypress Engine's claims, reserving the right to seek summary judgment on its own counterclaims later. (Docket Entry No. 53). Powertech Marine denies that it was the manufacturer of the prechambers and moved for summary judgment

on that basis. (Docket Entry No. 54). On May 3, 2017, the court issued a Memorandum and Order, granting HDMS's motion for summary judgment and dismissing Cypress Engine's claims against HDMS; denying Cypress Engine's motion for summary judgment and motion for leave to amend its answer; and denying Powertech Marine's motion for summary judgment, without prejudice and with leave to reurge. (Docket Entry No. 70).

Cypress Engine has moved for reconsideration of the court's Memorandum and Order, arguing that the court improperly interpreted the settlement agreement. (Docket Entry No. 85). HDMS has moved for summary judgment on its counterclaims against Cypress Engine. (Docket Entry No. 78). Powertech Marine has filed a second motion for summary judgment, seeking a ruling that it is not a proper party. (Docket Entry No. 77). Cypress Engine responded to both motions, (Docket Entry Nos. 84, 86). The court heard argument from counsel, and both Cypress Engine and HDMS supplemented their briefing. (Docket Entry Nos. 89, 90).

Each motion and response is analyzed below.

## II. Cypress Engine's Motion for Reconsideration

Cypress Engine urges the court to reconsider its interpretation of the parties' settlement agreement and its determination that the agreement consisted of the email exchanges and the one-page outline attached to the final email.

Cypress Engine and HDMS agreed that they had a settlement agreement, but they disputed what that agreement consisted of. The court applied federal and Texas law to conclude that "there is no indication in the email string or the one-page outline that the outline, standing alone, was intended to be the parties' fully integrated agreement." (Docket Entry No. 70 at 9). The one-page outline was attached to the final email from Shawn Bailes, a Cypress Engine employee. The email stated that "[t]he offer and acceptance outlined in this email string constitutes agreement between

3

[HDMS] and Cypress Engine on return quantities, prices, and timetable." (Docket Entry No. 70 at 10). The court ruled that the email string and the one-page outline, taken together, constituted the settlement agreement. Cypress Engine moves for reconsideration of this ruling.

The Federal Rules of Civil Procedure do not formally recognize a motion to reconsider. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). Motions to reconsider are treated as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), or as motions for relief from judgment under Rule 60(b), depending on when the motion is filed. *Demahy v. Schwarz Pharm. Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012). A motion for reconsideration is considered under Rule 59(e) if it is filed within 28 days of the court's ruling, and under Rule 60(b) if it is filed after that. *Id.* This motion is considered under Rule 60(b) because it was filed more than 28 days after the court's May 3, 2017 order.

Rule 60(b) of the Federal Rules of Civil Procedure sets out five bases for relief from a final judgment: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct of an adverse party; (4) the judgment is void; and (5) satisfaction, discharge, or release of the judgment. Fed. R. Civ. P. 60(b)(1)–(5). Rule 60(b)(6) also allows a court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) is granted only when it is not covered by the five enumerated grounds and when "extraordinary circumstances" are present. *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995) (citations omitted). "The district court enjoys considerable discretion when determining whether the movant has satisfied any of these Rule 60(b) standards." *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991).

Rule 60(b) allows the trial court to "correct obvious errors or injustices." *Fackelman v. Bell*,

564 F.2d 734, 736 (5th Cir. 1977). A party moving under Rule 60(b) must show "unusual or unique circumstances." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985). A motion to reconsider may not be used to relitigate matters, raise arguments, or submit evidence that could have been presented before the judgment or order was entered. 11 WRIGHT & MILLER § 2810.1 at 127–28 (footnotes omitted). "A party seeking reconsideration must show more than disagreement with the court's decision and recapitulation of the same cases and arguments already considered by the court." *Texaco Exploration & Prod., Inc. v. Smackco, Ltd.*, No. Civ. A. 98–2293, 1999 WL 539548, at *1 (E.D. La. July 26, 1999) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)). A motion for relief under Rule 60(b) is "not a substitute for the ordinary method of redressing judicial error—appeal." *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693, 696 (5th Cir. 1983) (citation omitted).

Cypress Engine fails to identify what part of Rule 60(b) justifies its motion for reconsideration. Cypress Engine seeks to relitigate an issue it litigated and lost, but the motion raises no new legal arguments or new facts. The record does not identify any "unusual or unique circumstances," "mistake, inadvertence, surprise, or neglect," "newly discovered evidence," "fraud, misrepresentation, or misconduct," or other reason to justify reconsideration. The record supports the court's finding as to what made up the settlement agreement.

The motion to reconsider is denied.

### III.    HDMS's Motion for Summary Judgment

HDMS moves for summary judgment on its counterclaims that Cypress Engine breached the parties' settlement agreement by filing the present lawsuit and by selling prechambers during the buyback period. (Docket Entry No. 78 at 8). HDMS asserts damages in the form of the attorneys' fees it incurred in defending this lawsuit and the profits it lost from Cypress Engine's prechambers

5

sales.  (Docket Entry No. 78 at 8).

**A.    Is HDMS Entitled to Summary Judgment on its Counterclaim That Cypress Engine Breached the Settlement Agreement By Filing this Suit?**

 HDMS argues that in the May 3, 2017 Memorandum and Order, (Docket Entry No. 70), this court found that, as a matter of law, Cypress Engine released the claims it raises in this lawsuit. (Docket Entry No. 78 at 15–16).  Cypress Engine responds that in the Memorandum and Order, the court found that the claims were "covered by" the settlement agreement, but the court did not find that Cypress Engine promised not to sue on the claims it asserted in this lawsuit.  (Docket Entry No. 84 at 13).  Cypress Engine argues that without a covenant not to sue, HDMS cannot recover damages for fees incurred in defending those claims in this lawsuit.  (Docket Entry No. 84 at 15).

In its May 3, 2017 Memorandum and Order, the court found that "[t]he uncontroverted record evidence shows that, as a matter of law, Cypress Engine waived its right to assert HDMS's offset as a breach of the settlement agreement."  (Docket Entry No. 70 at 12).  The court found that Cypress Engine's claims for breach of warranty and DTPA violation "fall squarely within the 'entire issue' that the settlement agreement resolved.  Cypress Engine cannot now assert claims it released in its settlement agreement with HDMS."  (Docket Entry No. 70 at 15).  Cypress Engine argues HDMS could raise the release of claims under the settlement agreement as an affirmative defense in this case, but HDMS does not have "the right to an affirmative action."  (Docket Entry No. 70 at 14).

Cypress Engine cites *National Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419 (Tex. 2015).  In *Westergren*, the plaintiff signed a release of "all claims" and then sued the defendant on those claims.  *Id.* at 422.  The defendant counterclaimed for breach of the release agreement.  *Id.* The Texas Supreme Court rejected the defendant's argument that "a party who releases a claim and later files suit on that claim necessarily breaches the release agreement."  *Id.* at 428.  The Court

6

concluded that none of the cases the defendant relied on "reads a covenant not to sue into a release that does not include such a promise." *Id.* The Court held that a release of a claim does not equate to a covenant not to sue on that claim. The issue is whether the specific release language "includes a contractual obligation not to sue." *Id.* The Court concluded:

> We . . . find that the release is unambiguous as to this point. The parties intended the release 'to release all liability described' within the agreement. Like the [mediated settlement agreement], it includes no language barring Westergren from bringing suit or stating that he would breach the release by doing do.
> . . .
> Although the release provides an affirmative defense to future suits, we cannot construe it as including a covenant not to sue where, in fact, the plain language does not bar future suits.

*Id.* at 428–29.

HDMS cites *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 159 (5th Cir. 2013), in support of its argument that when "an unambiguous settlement agreement bars the plaintiff's claims, the plaintiff's breach of the settlement agreement may be deemed 'obvious' as a matter of law." (Docket Entry No. 78 at 16). *Dallas Gas* involved an express covenant not to sue that specified attorneys' fees as damages. 733 F.3d at 153. Here, the parties' settlement agreement resolves "the entire issue," including a release of Cypress Engine's claims, but the agreement does not include an express covenant not to sue on those claims. (*See* Docket Entry No. 78, Ex. A).

The other cases HDMS cites are distinguishable. In *Widener v. Arco Oil & Gas Co.*, 717 F. Supp. 1211, 1213–14 (N.D. Tex. 1989), the plaintiffs signed a general release stating that they "do hereby covenant not to file a lawsuit to assert" the claims released. The case involved an express covenant not to sue that the plaintiffs breached by filing their lawsuit. This case does not. *Palavan v. McCulley*, 498 S.W.3d 134 (Tex. App.—Houston [1st Dist.] 2016, no pet.), involved an express promise by the plaintiff to dismiss the defendants from a pending lawsuit in exchange for a $1,200

settlement. The court held that by filing a notice of an appeal, the plaintiff in *Palavan* "kept the defendants in the suit and continued to pursue his claims against them," breaching the settlement agreement in the same way that filing a lawsuit would violate an express covenant not to sue. *Id.* at 142. The settlement agreement in this case did not include an express promise to dismiss a pending lawsuit. *Syrian American Oil Corporation v. Pecten Orient Company*, 524 S.W.3d 350 (Tex. App.—Houston [1st Dist.] 2017, no pet.), addressed whether a defendant's alleged fraudulent inducement to enter a settlement agreement could excuse the plaintiff's breach of that settlement agreement by filing a lawsuit. There are no allegations of fraudulent inducement in this case.

HDMS attempts to distinguish *Westergren* by asserting that the release in that case is different from the settlement agreement between Cypress Engine and HDMS. (Docket Entry No. 90 at 2). The critical document in *Westergren* was titled, "**<u>AGREEMENT AND RELEASE</u>**." The title as well as the contents undermine HDMS's argument that the release in that case and the settlement agreement here are different in kind. The relevant similarity is that the release in *Westergren* and in the present case both released the claims that were the basis of the later suits, but did not contain covenants not to sue on those claims.

HDMS cites *Guffey v. Clark*, No. 05-93-00849-CV, 1997 Tex. App. LEXIS 1609 (Tex. App.—Dallas Mar. 31, 1997, writ denied), and *Ganske v. WRS Group, Inc.*, No. 10-06-00050-CV, 2007 Tex. App. LEXIS 2991 (Tex. App.—Waco Apr. 18, 2007, no pet.), to support its argument that a release of claims in a settlement agreement followed by filing a lawsuit on those claims is an actionable breach of the agreement. Both are intermediate Texas appellate cases decided before the Texas Supreme Court decided *Westergren*. The court in *Guffey* relied on the policy rationale that denying an affirmative claim for breach of contract would deprive the non-breaching party of the benefit of the original bargain. 1997 Tex. App. LEXIS 1609, at *11. The *Westergren* court rejected

that rationale.  *Ganske* was also decided before *Westergren* and the language of the settlement agreement in *Ganske* was more specific than the language in this case.[1]  2007 Tex. App. LEXIS 2991, at 10–11 ("[N]o one to this agreement is in any way admitting liability, but in the interest of economy, they are compromising and settling these claims for the purposes of avoiding further litigation and investigation on account of the aforementioned matter.").  Here, on the other hand, HDMS asks the court to read a covenant not to sue into the settlement agreement, based on statements by Cypress Engine that it would refer the matter to legal counsel if a settlement could not be reached and the discussion of a resolution of the "entire issue" "to achieve closure" on the matter. (Docket Entry No. 78-1, Ex. A).  *Westergren* rejects this approach.  453 S.W.3d at 428.  In this diversity jurisdiction case, *Westergren* controls.  Neither *Guffey* nor *Ganske* provides a basis to circumvent *Westergren*.

HDMS cites several other cases, but they were decided long before *Westergren* and none provides a basis to avoid it here.  *See McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex. 1971) (differentiating between a release of a claim and the satisfaction of a claim when the plaintiff released one tortfeasor to settle a pending lawsuit and subsequently sued two other tortfeasors on the same claim); *Rexroat v. Prescott*, 570 S.W.2d 457 (Tex. App.—Amarillo 1979, writ ref'd n.r.e) (applying the *McMillen* rule that a release applies only to those parties named in it and distinguishing a release from a satisfaction of damages); *Kerrville HRH, Inc. v. Kerrville*, 803

---

[1] *Ganske* has been cited by other courts.  *See Haubold v. Med. Carbon Research Inst., LLC*, No. 03-11-00115-CV, 2014 Tex. App. LEXIS 2863, at *21–22 (Tex. App.—Austin Mar. 14, 2014); *Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 153–54 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (J. Donovan, dissenting); *Blackstone Med., Inc. v. Phoenix Surgicals, LLC*, 470 S.W.3d 636, 653 (Tex. App.—Dallas 2015, no pet.); *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 355 (Tex. App.—Dallas 2015, no pet.); *In re Marriage of Pyrtle*, 433 S.W.3d 152, 169–170 (Tex. App.—Dallas 2014, pet. denied); *Vianet Grp. PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 U.S. Dist. LEXIS 108296, at *22 (N.D. Tex. Aug. 16, 2016); *Reid v. GMC*, 489 F. Supp. 2d. 614, 618 (E.D. Tex. 2007); *Boyaki v. John M. O'Quinn & Assocs., PLLC*, No. 01-12-00984-CV, 2014 Tex. App. LEXIS 10862, at *38 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

S.W.2d 377 (Tex. App.—San Antonio 1990, writ denied) (distinguishing between compromise and settlement on the one hand and accord and satisfaction on the other to determine whether a novation existed); *Priem v. Shires*, 697 S.W.2d 860 (Tex. App.—Austin 1985, no writ) (differentiating between a settlement and compromise on the one hand and accord and satisfaction on the other to determine whether a novation occurred).

Under Texas law, the court cannot imply a covenant not to sue on released claims from a settlement releasing those claims. The court cannot grant HDMS relief on its damages counterclaim that Cypress Engine breached the settlement agreement by filing the present lawsuit. HDMS could, and did, raise the breach of the settlement agreement as an affirmative defense to Cypress Engine's claims, but HDMS cannot proceed with its counterclaim for damages for the breach. HDMS's motion for summary judgment on this counterclaim is denied.

### B. Is HDMS Entitled to Summary Judgment on its Counterclaim that Cypress Engine Breached the Settlement Agreement by Selling Prechambers?

HDMS also argues that Cypress Engine breached the settlement agreement when it sold prechambers during the buyback period. (Docket Entry No. 78 at 21). In the May 3, 2017 Memorandum and Order, the court found that "HDMS presents uncontroverted record evidence that Cypress Engine's prechambers sales were a material breach" of the parties' settlement agreement. (Docket Entry 78 at 21 (citing Docket Entry No. 70 at 13)). The court's ruling on this issue does not limit HDMS to a defense to a claim by Cypress Engine. The undisputed record evidence shows that, as a matter of law, Cypress Engine breached the settlement agreement when it sold prechambers during the buyback period, competing with HDMS's prechambers sales. HDMS is entitled to summary judgment on this counterclaim.

HDMS seeks $46,016.40 in damages, the difference between the retail-price-less-restocking-fee amount that HDMS refunded Cypress Engine for the returned prechambers ($98,528.40), and

the lower amount that HDMS could have paid for those prechambers by buying them on the wholesale market ($52,512.00). HDMS labels this wholesale price the "fair market value." (Docket Entry No. 78 at 21). HDMS argues that had it known that Cypress Engine would continue to sell prechambers during the time HDMS was repurchasing them from Cypress Engine, HDMS would not have agreed to the repurchase arrangement in the settlement. (Docket Entry No. 78 at 22).

Cypress Engine responds that HDMS failed to mitigate its damages because it did not resell the prechambers it acquired from Cypress Engine in the retail market and deduct the amount from the amount it refunded Cypress Engine. (Docket Entry No. 84 at 16–17). HDMS argues that Cypress Engine failed to plead mitigation as an affirmative defense, forfeiting the right to assert that defense now. (Docket Entry No. 90 at 1).

Failure to mitigate damages is an affirmative defense. *See, e.g., E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 n.30 (5th Cir. 2012); *Branch Banking & Trust Co. v. Lexiam Enters., LLC*, No. 3:15-CV-2928-M, 2016 U.S. Dist. LEXIS 147305, at *8 (N.D. Tex. Oct. 24, 2016) ("Under Texas law, the doctrine of mitigation of damages is an affirmative defense that 'prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff.'") (citing *Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995)). "The failure to plead an affirmative defense generally results in waiver of that defense." *Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C.*, 546 Fed. App'x 458, 465 (5th Cir. 2013); *see also* Fed. R. Civ. P. 8(c). "A court may excuse the failure to plead an affirmative defense, however, if the opposing party is not prejudiced." *Id.* (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) for the proposition that "the purpose of the pleading requirement in Rule 8(c) is to give the opposing party notice and an opportunity to argue why the defense is inappropriate."). The Fifth Circuit "employs a fact-specific

analysis when deciding whether the plaintiff was unfairly surprised." *Id. See also Std. Waste Sys. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010) (excusing the failure to plead an affirmative defense because it did not result in unfair surprise or prejudice to the opposing party).

HDMS received adequate notice of, and had an adequate opportunity to respond to, Cypress Engine's defense that HDMS failed to mitigate its damages. Cypress Engine argued that HDMS failed to mitigate its damages in its response to HDMS's motion for summary judgment, filed on September 20, 2017. (Docket Entry No. 86). Counsel argued the merits at a hearing held on October 2, 2017. (Docket Entry No. 91). The court allowed HDMS to supplement its submissions with added case support. (Docket Entry No. 90). The defense raised issues relating to HDMS's own actions, and HDMS had the information it needed to respond to the defense. The court finds that allowing Cypress Engine to raise the affirmative defense of HDMS's failure to mitigate damages at the summary judgment phase did not result in unfair surprise or prejudice to HDMS. The failure to plead the affirmative defense is excused.

"The party asserting failure to mitigate has the burden of proving facts establishing lack of mitigation and must prove the amount by which the damages were increased by failure to mitigate." *Balfour Beatty Rail v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 406 (N.D. Tex. 2016). Cypress Engine has met that burden. Cypress Engine has shown that HDMS's damages claim fails to take into account the retail resale value of the 96 returned prechambers. (Docket Entry No. 84 at 16). HDMS argues that it could have bought those 96 prechambers at wholesale for less than the retail amount it paid Cypress Engine for the 96 prechambers, increasing its profit margin. (Docket Entry No. 78 at 21–22). If HDMS had resold the 96 returned prechambers at retail value, it would not have lost money, as Cypress Engine points out. (Docket Entry No. 84 at 16–17). There is no record basis to find that HDMS attempted but was unable to resell the returned prechambers at the retail

price. HDMS's failure to mitigate its damages by reselling the 96 prechambers Cypress Engine returned caused the damages HDMS now seeks. HDMS is not entitled to recover damages for Cypress Engine's sale of prechambers during the period it was returning them to HDMS.

### C.     Is HDMS Entitled to Attorneys' Fees?

HDMS's claim for attorneys' fees is based on two theories: (1) § 38.001(8) of the Texas Civil Practice & Remedies Code provides for recovery of reasonable attorneys' fees for a breach of contract claim; and (2) Cypress Engine brought its DTPA claim in bad faith, which entitles HDMS to fees and costs under § 17.50(c) of the Texas Business & Commerce Code.

In response, Cypress Engine argues that: (1) HDMS failed to plead its attorneys' fees as special damages; (2) Texas law does not support recovering attorneys' fees as actual damages, not only as damages incidental to actual damages, which HDMS cannot prove; (3) § 38.001(8) does not apply to Cypress Engine because it is an LLC; (4) HDMS failed to present the fee claim to Cypress Engine in a timely manner; (5) § 17.50(c) does not apply because the court has not yet addressed the merits of Cypress Engine's DTPA claim; (6) if § 17.50(c) does apply, Cypress Engine's DTPA claim is not groundless and was not brought in bad faith or to harass; (7) HDMS cannot show the amount of  attorneys' fees it incurred in defending against Cypress Engine's DTPA claim, since HDMS successfully limited discovery to breach of the settlement agreement; and (8) HDMS seeks unreasonable and excessive fees.

### i.     Are Attorneys' Fees Recoverable under § 38.001?

Section 38.001(8) provides that "[a] person may recover reasonable attorney's fees from an *individual* or *corporation*, in addition to the amount of a valid claim and costs, if the claim is for: . . . an oral or written contract." Tex. Civ. Prac. & Remedies Code § 38.001(8) (emphasis added). Several district courts have made *Erie* guesses as to how § 38.001(8) applies to LLCs, as opposed

to individuals or corporations.

The Texas Supreme Court has yet to address whether an LLC is a "corporation" under § 38.001(8). HDMS cites eight cases in support of its argument that attorneys' fees may be awarded against an LLC. The cases HDMS cites assume without discussing that § 38.001(8) applies to an LLC. There is no analysis of the issue. *See Howard Indus. v. Crown Cork & Seal Co., LLC*, 403 S.W.3d 347 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (affirming an attorneys' fees award against an LLC after determining that a breach of warranty claim qualifies as a contract claim for purposes of § 38.001(8)); *Triton 88 v. Star Elec. LLC*, 411 S.W.3d 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (affirming an attorneys' fees award against an LLC after rejecting a challenge to reasonableness); *Lee-Way Prince Enters., LLC v. QAI Assur., Inc.*, No. 01-07-01004-CV, 2009 WL 3490982 (Tex. App.—Houston [1st Dist.] Oct. 29, 2009, no pet.) (affirming an attorneys' fees award against an LLC after rejecting a challenge to a promissory estoppel claim); *Odela Grp., LLC v. Double-R Walnut Mgmt. LLC*, No. 05-16-00206-CV, 2017 WL 1360209 (Tex. App.—Dallas Apr. 13, 2017, no pet.) (affirming an attorneys' fees award against an LLC under the DTPA and § 38.001(8)); *Mobilelink San Antonio, LLC v. PNK Wireless Comm., Inc.*, No. 01-15-01048, 2016 WL 7368066 (Tex. App.—Houston [1st Dist.] Dec. 20, 2016, no pet.) (affirming an attorneys' fees award against an LLC after rejecting a challenge to the evidence of the fee amount); *Expelled Grain Prods., LLC v. Corn Mill Enters., LLC*, No. 07-14-00398, 2016 WL 4413323 (Tex. App.—Amarillo, Aug. 17, 2016, pet. denied) (affirming attorneys' fees award against an LLC after rejecting a challenge to the sufficiency of the evidence); *Crisp Analytical Lab, LLC v. Jakalam Props. Ltd.*, 422 S.W.3d 85 (Tex. App.—Dallas 2014, pet. denied) (affirming an attorneys' fees award against an LLC under § 38.001(8)); *Bohatch v. Butler & Binion*, 977 S.W.2d 543 (Tex. 1998) (affirming an attorneys' fees award against a partnership under § 38.001(8)).

Cypress Engine cites a number of cases that raise the issue and specifically analyze the availability of attorneys' fees for a successful breach of contract claim against an LLC under § 38.001(8). These cases find no basis under § 38.001(8) to recover fees against an LLC. *See Hoffman v. L&M Arts*, No. 3:10-CV-0953-D, 2015 U.S. Dist. LEXIS 27784, at *29 (N.D. Tex. Mar. 6, 2015), *aff'd in part, rev'd in part on other grounds*, 838 F.3d 568 (5th Cir. 2016) (concluding that "based on the plain meaning of the terms 'individual' and 'corporation,' the history of § 38.001 and its predecessor, Article 2226, and the construction given to § 38.001 by Texas courts of appeals and federal courts (including judges of this court), the court makes an *Erie* prediction that the Supreme Court of Texas would hold that an LLC is neither an 'individual' nor a 'corporation' within the meaning of § 38.001, and that a party with a valid claim cannot recover attorney's fees from an LLC under § 38.001."); *Siwell, Inc. v. Leverage Fin., LLC*, No. 5:12-CV-185-D, 2017 U.S. Dist. LEXIS 59149 (N.D. Tex. Apr. 18, 2017) (citing *Hoffman* and holding that § 38.001(8) does not allow the recovery of attorneys' fees from an LLC); *J.D. Fields & Co. v. N.Am. Fabricators, LLC*, No. H-15-317, 2016 WL 7912455 (S.D. Tex. Nov. 7, 2016) (collecting cases supporting its conclusion that courts have "narrowly construed" § 38.001 to prevent recovery from entities other than corporations, including LLCS; *Taylors Int'l Servs. v. Cuero Oilfield Hous., LLC*, No. A-16-CA-512-SS, 2016 U.S. Dist. LEXIS 186589, at *1–2 (W.D. Tex. Oct. 28, 2016) ("There is no logic to the law eliminating attorney's fees that would be owed by individuals and corporations, but that is exactly what Texas has done. Texas Civil Practice and Remedies Code Section 38.001 allows reasonable attorney's fees for individuals or corporations. This has been interpreted as excluding attorney's fees against [LLCs]."); *Solid Sys. CAD Servs. v. Total Risc Tech, Ltd.*, No. 4:12-CV-3176, 2016 U.S. Dist. LEXIS 141772 (S.D. Tex. Oct. 13, 2016) (attorneys' fees are not recoverable against an LLC under § 38.001 but are against an LLC that had previously identified itself as a corporation

to the court); *Chaparral Energy, LLC v. Dudley*, No. 4:13-CV-3540, 2015 WL 1294250 (S.D. Tex. Nov. 3, 2015) (citing *Hoffman* in determining that § 38.001 does not allow recovery of attorneys' fees against LLCs and rejecting cases awarding fees against LLCs without addressing the issue).

The Southern District of Texas recently examined the issue in *BHL Boresight, Inc. v. Geo-Steering Sols. Inc.*, No. 4-15-CV-00627, 2017 U.S. Dist. LEXIS 98057 (S.D. Tex. June 26, 2017). Noting that "other courts to consider the issue since *Hoffman* have also overwhelmingly concluded that § 38.001 does not support recovery of attorney's fees from an LLC," the court denied the fee award. *Id.* at *52 (collecting cases).

The courts that have considered and analyzed the question make clear that HDMS's right to recover fees under § 38.001(8) should be rejected. HDMS's motion for summary judgment on this ground is denied.

### ii. Are Attorneys' Fees Recoverable Under the DTPA?

HDMS also seeks the fees and expenses its incurred defending against Cypress Engine's DTPA claim. HDMS asserts that the DTPA claim is groundless and was brought in bad faith, for the purpose of harassment. (Docket Entry No. 78 at 28). Cypress Engine responds that because HDMS "successfully requested that this Court initially limit discovery to determine which party breached the Agreement first," the court did not decide the merits of Cypress Engine's DTPA claim. (Docket Entry No. 84 at 29). Without a merits decision, Cypress Engine argues, the claim cannot be found groundless, as a matter of law. (Docket Entry No. 84 at 29). Cypress Engine alternatively argues that its DTPA claim was neither groundless nor filed to harass. (Docket Entry No. 84 at 29–31).

Texas Business and Commerce Code § 17.50(c) provides that, "[o]n a finding by the court

that an action under this section was groundless in fact or law or brought in bad faith,[2] or brought

for the purpose of harassment, the court shall award to the defendant reasonable and necessary

attorneys' fees and court costs." *See also Howard v. State Farm Lloyds*, No. H-04-0352, 2005 U.S.

Dist. LEXIS 48236, at *22–23 (S.D. Tex. Oct. 13, 2005). "The term 'groundless' for DTPA

purposes has the same meaning as it does under civil procedure rule 13: '[N]o basis in law or fact

*and* not warranted by good faith argument for the extension, modification, or reversal of existing

law.'" *Young v. Pulte Homes of Tex., L.P.*, No. 02-14-00224-CV, 2016 Tex. App. LEXIS 9485, at

*14 (Tex. App.—Fort Worth Aug. 26, 2016) (emphasis in original). The test for groundlessness is

"whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the

consumer's claim." *Id.* (citation omitted). "[G]roundless under the DTPA is not synonymous with

'no evidence.'" *Id.*

HDMS argues that the undisputed facts in the summary judgment record demonstrate that

Cypress Engine's DTPA claims are groundless. HDMS relies on the fact that Cypress Engine

released the claims it asserts in this litigation in the settlement agreement and could not recover on

those claims as a result. (Docket Entry No. 78 at 29). Cypress Engine responds that filing a released

---

[2] HDMS argues that Cypress Engine's bad faith is demonstrated by its ongoing "vexatious litigation" tactics. (Docket Entry No. 78 at 29). Cypress Engine argues that it brought the claim because it believed the prechambers to be defective and filed its lawsuit only after believing that HDMS had violated the settlement agreement first by offsetting the refund amounts by unrelated outstanding invoices. (Docket Entry No. 84 at 30). To be brought in bad faith, "a defendant must show that the suit was motivated by a malicious or discriminatory purpose." *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 20 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). "Malice may be inferred from the proof that the consumer did not have a good faith belief that there was a basis for his claim." *Knebel v. Port Enterprises, Inc.*, 760 S.W.2d 829, 832 (Tex. App.—Corpus Christ 1988, writ denied). The party alleging bad faith must "offer evidence and secure a favorable fact finding on the issue of bad faith." *Id.* The evidence offered by HDMS consists of an email string in which Cypress Engine representatives suggest that it should "try to assert fraud" and "go for the throat." (Docket Entry No. 78 at 29). The quotes pulled from the emails ignore the full sentence: "[i]n short, go for the throat so long as we are ethically able to do so." (Docket Entry No. 78-5 at 1). Standing alone, the discussion of legal strategies does not rise to the level of bad faith.

claim could not be the basis for HDMS to recover on a counterclaim for breach of contract. That is correct. But Cypress Engine asserted the released claims knowing that HDMS had a valid affirmative defense precluding Cypress Engine from recovery. That makes the assertion of the DTPA claims groundless as a matter of law. *Cf. Haynesville Shale Rentals, LLC v. Total Equip. & Serv.*, No. H-12-0860, 2014 U.S. Dist. LEXIS 48478, at *15 (S.D. Tex. Apr. 8, 2014) (finding a DTPA claim "precluded by express statutory language" that "Plaintiffs well knew or should have known" barred their claim made the claim groundless) (citing *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp. 2d 482, 501, 506 (N.D. Tex 2001) (a DTPA claim that the plaintiff "was explicitly excluded from bringing" was groundless)).

Under Texas law, the party seeking attorneys' fees must segregate the fees incurred between claims that permit recovery of attorneys' fees and claims that do not. *See, e.g.*, *Frazin v. Haynes & Boone, LLP*, 413 B.R. 378, 413 (Bankr. N.D. Tex 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). The Texas Supreme Court held that attorneys' fees need not be segregated when the fees "rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Id.* (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)). That rule, however, was modified in *Chapa* after the exception began to swallow the rule:

> [Stewart Title] was certainly correct that many if not most legal fees . . . cannot and need not be precisely allocated to one claim or the other. Many of the services involved in preparing a contract or DTPA claim for trial must still be incurred if tort claims are appended to it; adding the latter claims does not render the former services unrecoverable. Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, voir dire of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they

18

do double service. Accordingly, we reaffirm the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated. . . . This standard does not require more precise proof for attorney's fees than for any other claims or expenses.

*Frazin*, 413 B.R. at 414 (citing *Chapa*, 212 S.W.3d at 313–14).

Although HDMS is entitled to recover the attorneys' fees it incurred in defending against Cypress Engine's DTPA claim, HDMS seeks the entire amount of attorneys' fees—$393,300.87—it incurred in defending against all the claims before the court's May 3, 2017 ruling. HDMS does not segregate the fees it incurred in defending the DTPA claim from those fees incurred in defending against other claims. (Docket Entry No. 78 at 15, n.5; 78-6 at 8). That the facts are intertwined does not make the fees incurred in defending against the other non-DTPA claims recoverable. No later than October 13, 2017, HDMS must submit evidence of the fee amount on the DTPA claim, segregating the fees it seeks for defending the DTPA claim from the other fees it incurred or, in the alternative, that the fees were for claims so interrelated that segregation is not required.

## IV.    **Powertech Marine's Motion for Summary Judgment**

Powertech Marine moves for summary judgment dismissing the claims against it on the ground that it is an improper party. (Docket Entry No. 77). Powertech Marine argues that it did not manufacture the prechambers, did not issue a product warranty to Cypress Engine, and did not contract with Cypress Engine. (Docket Entry No. 77 at 5). Powertech Marine asks the court to declare Cypress Engine's continued litigation against Powertech Marine groundless and in bad faith and award Powertech Marine attorneys' fees. (Docket Entry No. 77 at 10).

In response, Cypress Engine maintains that there are genuine factual disputes material to

deciding whether Powertech is the correct party. Cypress Engine asks to conduct discovery, but does not specify what discovery it needs to respond to the summary judgment motion. (Docket Entry No. 86 at 4).

Powertech submitted an affidavit from Steve Powers, the director of Powertech Marine and the coowner of Premium OEM Parts, LLC, known as POEM, stating that POEM manufactured the prechambers at issue. (Docket Entry No. 77-1). Powertech also submitted an affidavit from George Erickson, the president of HDMS. (Docket Entry No. 77-2). Both affiants state that Powertech did not manufacture the prechambers and that HDMS did not purchase any prechambers from Powertech Marine. Powertech Marine also submitted invoices dated from January to December 2013, showing shipments of prechambers from POEM to a company called Premium Power Solutions, then from Premium Power Solutions to Cypress Engine. (Docket Entry No. 77, Ex. A).

Cypress Engine submitted a number of invoices from the same period between Propulsion Technologies and POEM, sent to POEM at the same address as Powertech Marine. (Docket Entry No 86-1). Some, but not all, of the invoices appear to include prechambers. (Docket Entry No. 86 at 7). But neither Cypress Engine's invoices nor the other evidence it points to show that Powertech Marine is the same entity as POEM. The record evidence provides no explanation of why, after repeatedly being told that POEM was the manufacturer of the prechambers and the correct entity to sue, Cypress Engine refused to at least add POEM as a defendant.

Cypress Engine has failed to show why it could not respond to Powertech Marine's motion without additional discovery. *See, e.g.*, *Krim v. BancTexas Group*, 989 F.2d 1435, 1442 (5th Cir. 1993) ("To obtain continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing . . . why he

needs additional discovery and *how* the additional discovery will create a genuine issue of material fact. The nonmoving party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts.") (internal citations omitted) (emphasis in original).

The undisputed record shows that, based on undisputed facts, Powertech Marine is not a proper party defendant, as a matter of law. Its motion for summary judgment is granted.

## V. Conclusion

HDMS's motion for summary judgment is granted in part and denied in part. The court grants summary judgment for HDMS on its counterclaim for breach of contract for Cypress Engine's sale of prechambers, and dismisses HDMS's counterclaim for breach of contract for filing this litigation. The court grants HDMS's motion for summary judgment on its counterclaim that Cypress Engine's DTPA claims were groundless, and grants Powertech Marine's motion for summary judgment that it is not a proper party to the suit. HDMS must submit evidence of recoverable fees no later than October 13, 2017.

SIGNED on October 6, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge