**In The United States District Court**
**For The Southern District Of Texas**
**Houston Division**

| | | |
|---|---|---|
| Cypress Engine Accessories, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| HDMS Limited Company | § | |
| d/b/a Premium Power Solutions | § | Civil Action No. 4:15-Cv-2227 |
| and Powertech-Marine, Inc., | § | |
| | § | |
| Defendants. | § | |

**Declaration of Neil Kenton Alexander**
**Regarding HDMS's Attorneys' Fees and Expenses**

1.          "My name is Neil Kenton Alexander.  I am competent to make this declaration.  The facts stated in this declaration are within my personal knowledge and gathered from records regularly maintained by Porter Hedges LLP in the course of its business.  I am fully competent in all respects to testify to the matters stated herein.

2.          I have been the lead attorney responsible for representing HDMS Limited Company d/b/a Premium Power Solutions ("HDMS") throughout this lawsuit.  I have represented parties in commercial litigation similar in kind to this case in Houston, the Southern District of Texas, the Fifth Circuit Court of Appeals, and other appellate courts in numerous cases in the last 39 years.  I am admitted to

**Exhibit A**

practice in the United States District Court for the Southern District of Texas, the United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court.  I have been a partner in the law firm of Porter Hedges LLP for the last 24 years.  Prior to that time, I was a partner in the Houston office of Baker Botts, L.L.P.  My resume is attached hereto as **Exhibit A-1**.

3.       Below, this Declaration describes:

    a. The work required to defend HDMS from the groundless Texas Deceptive Trade Practices Act ("DTPA") claims asserted against it in this lawsuit;

    b. The attorneys' fees and expenses incurred and paid by HDMS for this work; and

    c. The basis for my opinion that these attorneys' fees and expenses were reasonable.

<u>**Summary of Work Required**</u>

4.       Cypress Engine Accessories, LLC's ("Cypress") initially filed this lawsuit on August 4, 2015, asserting claims against HDMS under the DTPA and for breach of warranty.  HDMS was not served with notice until November 4 and 6, 2015 and thereafter the case was automatically abated for Cypress's failure to respond to HDMS's Verified Plea in Abatement.

5.       Once the abatement was lifted, HDMS sought a prompt adjudication of Cypress's claims because HDMS believed that the lawsuit was barred by the

parties' Settlement Agreement.[1]   HDMS's defense required it to prove 1) that a valid settlement agreement existed between HDMS and Cypress, 2) that the settlement agreement released the claims asserted by Cypress, and 3) that Cypress breached the settlement agreement first.[2]   Therefore, HDMS's defense required considerably more work to show that Cypress's DTPA claim was groundless than the typical case in which the defendant establishes that a DTPA claim is groundless based upon, for example, its failure to meet statutory conditions, such as  the statute of limitations or the exemption of transactions exceeding the $100,000 or $500,000 limit.  HDMS did establish that it was entitled to summary judgment over Cypress's opposition that the Settlement Agreement discharged Cypress' claim, Cypress breached that agreement, and thus its DTPA claim was groundless.

6.         Because the amount of money apparently at stake in the litigation at its outset appeared to me relatively small compared to the amount of work that the

---

[1] The exact same proof was also required to defeat Cypress's DTPA and breach of warranty claims.

[2] HDMS was required to prove that Cypress breached the Settlement Agreement first in order to establish that Cypress did not have the right to treat the Settlement Agreement as rescinded and recover under the underlying claims, particularly in light of Cypress's First Amended Original Complaint [Dkt. No. 20 at 6], which added a breach of contract claim against HDMS for taking offsets that Cypress alleged were impermissible under the Settlement Agreement.  *Murray v. Crest Constr.*, 900 S.W.2d 342, 344 (Tex. 1995); *see also Hernandez v. Telles*, 663 S.W.2d 91, 93 (Tex. App.—El Paso 1983, no writ.) (refusing to allow plaintiffs to rescind compromise and settlement agreement and sue for underlying DTPA claims when plaintiffs breached the compromise and settlement agreement first); *cf. BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Traflagar Holdings I, Ltd.*, 218 S.W.3d 137, 146 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (on failure of debtor to perform under executory accord, creditor may treat accord as repudiated and may choose to claim rights under the original cause of action or the accord).

litigation seemed probable to require, in consultation with HDMS, I assigned day-to-day responsibility for representing HDMS to Stephanie Holcombe, an associate with whom I have worked extensively, including two matters that were tried, and whose billing rate was significantly lower than my own.  I arranged for her to be assisted by Jamie Godsey, another associate in our firm.  I consulted with Ms. Holcombe, Ms. Godsey, and our client throughout.  I instructed Ms. Holcombe to look creatively for ways to limit the cost of the litigation to our client HDMS while expediting the resolution of the claims asserted.

7.      For example, with the consent of HDMS, we requested a face-to-face meeting in Houston (where Cypress is headquartered) between HDMS executives Rob Erickson and Dave Davis and Cypress's Jon Yaunke along with counsel to explore resolution or simplification of the lawsuit.  Cypress's counsel agreed to such a meeting, which by agreement was scheduled for August 9, 2016 at 1:00 PM. Mr. Erickson and Mr. Davis traveled from Arizona and New Mexico to Houston for the meeting, and we prepared for the meeting.  Unfortunately presaging the extent to which Cypress would increase the complexity and cost of this litigation, at the appointed hour for the settlement conference, Cypress's counsel Mr. Leger informed us by phone that Cypress's Mr. Yaunke would not appear.

8.      Seeking other means to limit the cost of the litigation, we proposed to stage the discovery, confining it to the key issues that would resolve the DTPA

claims as well as all remaining claims in the lawsuit: Did the parties' agreement settle the all of Cypress's claims in this lawsuit, including the DTPA claims, and if so, which party breached that agreement first? This Court granted our request on August 30, 2016 (the "Limited Discovery Order"). We sought to obtain records of Cypress pertinent to the first stage of discovery in a manner to minimize the cost of reviewing those records and to expedite the presentation of the issues on summary judgment that would dispose or substantially narrow the scope of the case.

9.        Unfortunately, HDMS was required to seek assistance from the Court on multiple occasions to compel discovery from Cypress and to require Cypress to abide by the Limited Discovery Order.

10.       For instance, an important issue was whether Cypress had abided by its promise in the Settlement Agreement not to engage in the pre-chamber business while the buyback of pre-chambers by HDMS was underway. Cypress produced only three documents in response to HDMS's 18 requests for production relating to Cypress's pre-chamber business after the Settlement Agreement and the marketing of pre-chambers by Cypress and Downin's. The Court held a hearing on September 29, 2016 where counsel for Cypress represented to the Court that his client had searched for but found "no documents" responsive to HDMS's requests (aside from the three he had already produced). After the Court ordered an electronic search of specific relevant terms derived from those requests, Cypress

produced more than 1,200 responsive documents and communications that revealed Cypress's extensive marketing of pre-chambers in violation of the Settlement Agreement.

11.        When Cypress produced its documents pursuant to the September 29, 2016 order, it failed to produce its records, particularly emails and corporate records, in native form complete with metadata as required by the rules and HDMS's requests.  **Exhibit A-2**, Holcombe Email to Leger, Oct. 18, 2016.  Many emails were missing their attachments, and for the few attachments that were provided, they were separated from the parent e-mails, making them difficult to locate and review.  *Id.*  Moreover, many emails were randomly grouped together and scanned as single documents, others included page-breaks where no page-break actually existed, emails with sequential pages were out of order, Bates numbers were repeated, and several Bates numbered-pages were omitted, significantly increasing the burden on counsel for HDMS to review the approximately 2,700 pages in advance of scheduled depositions, which the Court ordered to take place just two weeks later.  *Id.*  Despite several communications with counsel for Cypress,[3] the deficiencies in the productions were not corrected in advance of the deposition of its corporate representative, Shawn Bailes, and

---

[3] *Id.*; *see also* **Exhibit A-3**, Email chain between counsel for HDMS and Leger between October 19–24, 2016.

designated expert, Tracy Northington on October 26, 2016 and October 27, 2016, respectively.

12. After another hearing and subsequent court order on October 27, 2016, Cypress re-produced the documents (totaling 5,625 pages) in native format as required by the Court, forcing HDMS to review two sets of documents.

13. In addition to this discovery abuse, Cypress engaged in a litany of other conduct that defeated HDMS's efforts to minimize attorneys' fees and costs in this litigation, including engaging in other vexatious discovery tactics; failing to comply with the Federal Rules of Civil Procedure in filing multiple untimely or improper pleadings and in serving improper deposition notices; refusing to cooperate regarding the entry of a Protective Order, necessitating an emergency motion to the Court, and multiple letters to the Court; and failing to appear for the April 12, 2016 hearing on the parties' respective motions for summary judgment and several other issues. Based on my review of the records, counsel for HDMS spent at least 17% of its time in this case dealing solely with Cypress's improper conduct, which is identified as sanctionable conduct the chart attached hereto as **Exhibit A-4**.[4]

14. In total, counsel for HDMS appeared at seven hearings or conferences before the Court. Counsel for HDMS also prepared for and took four depositions

---

[4] Consistent with the Court's prior rulings and HDMS's previous motions, HDMS continues to reserve its right to submit an application for the fees it incurred as a result of Cypress's sanctionable conduct at a later date before the close of this case.

in Houston, three noticed by HDMS (Bailes, Northington, and Yaunke), and one noticed by Cypress (HDMS corporate representative Erickson).  Less than nine months after the Initial Pre-Trial Conference, HDMS filed its Motion for Summary Judgment on all of Cypress's claims on December 16, 2016, which was granted in whole on May 3, 2017.  *See* Mem. & Order [Dkt. No. 70] (May 3, 2017).

15.      HDMS supported its Motion for Summary Judgment on Cypress's DTPA claim with the documents produced and the deposition testimony obtained as a result of the discovery hearings and conferences with the Court.

16.      I have reviewed the time records of all of the lawyers, paralegals, and law clerks that devoted professional time to the defense of HDMS.  Summarized below are the time and charges on various matters in this litigation.

17.      The amount of professional time devoted to representing HDMS in these matters was very significant.  As further described below, representation of HDMS in defending against the DTPA claims required at least 844.50 hours of lawyer time and 199.75 hours of paralegal and law clerk time.  HDMS has incurred $322,928.56 in fees for this professional time (after applying all discounts) and $18,456.41in expenses.

|  | **Hours** | **Fees** | **Expenses** | **Totals** |
|---|---|---|---|---|
| Defending against bad faith DTPA claim | 1,044.25 | $322,928.56 | $18,456.41 | $341,384.97 |

**Table 1**

18.      The amounts described in Table 1 were arrived at based on the time recorded daily by the lawyers and paralegals at Porter Hedges who worked on this matter, after segregating where possible those that related to the DTPA claims, which is attached hereto as Exhibit A-4.[5]    Attached as **Exhibit A-5** to this Declaration are true and correct copies of the invoices to date for professional services and expenses of Porter Hedges in representing HDMS in this matter (redacted for privileged material).

19.      The total fees were calculated by summing the fees incurred for discrete legal services related directly and solely to defending against the groundless DTPA claim or advancing both the DTPA defense and other unrecoverable claims as permitted under Texas law.  Mem. & Order [Dkt. No. 92] at 18–19 (Oct. 6, 2017); *In re Frazin*, 413 B.R. 378, 414 (Bankr. N.D. Tex. 2009), *subsequently aff'd in part, rev'd in part,* 732 F.3d 313 (5th Cir. 2013) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)).   For instance, as recognized by the Texas Supreme Court in *Chapa*, many of the legal services performed in this lawsuit such as reviewing pleadings, investigating and

---

[5] Exhibit A-4 reflects all time entries that have been billed to HDMS, as well as for fees and expenses incurred after September 30, 2017 that have not yet been billed.

proving background facts, propounding and responding to discovery, and taking and defending depositions would have been incurred in response to the DTPA claim, alone, even though the tasks performed "double service" in relation to the DTPA claim and other, non-recoverable claims. *Frazin*, 413 B.R. at 414 (citing *Chapa*, 212 S.W.3d at 313–14). This is also true of many of the fees and expenses related to Cypress's breach of warranty claim, not only because it relied on essentially identical facts and evidence as the DTPA claims, but also because HDMS sought to dismiss it based on the exact same defense—that the claim was barred by the Settlement Agreement. Therefore, many of the discrete legal services performed in defense of the DTPA claims also advanced its defense of the breach of warranty claims. However, any fees and expenses incurred solely in defending the breach of warranty claim have been segregated.

20.     Similarly, fees and expenses incurred in overcoming Cypress's breach of contract claim cannot be segregated because they were necessary to defend against Cypress's groundless DTPA claims. *Frazin*, 413 B.R. at 313 (citing *Varner v. Cardenas*, 218 S.W.3d 68, 69–70 (Tex. 2007) (finding that party seeking to recover attorneys' fees which were recoverable on the affirmative claim it asserted were not required to segregate fees incurred in defendant against a counterclaim, when overcoming the counterclaim was necessary in order to fully recover on its affirmative claim)). To succeed on HDMS's DTPA defense,

HDMS had to establish that Cypress—not HDMS—breached the Settlement Agreement first, and thus, Cypress had no right to rescind the Settlement Agreement and sue on the underlying claim. *See, e.g., Hernandez,* 663 S.W.2d at 93 (refusing to allow rescission of compromise and settlement agreement by breaching party). In other words, the effect of success in defending against Cypress's breach of contract claim was to establish the groundlessness of Cypress's DTPA, and thus fees and expenses incurred for those efforts need not be segregated. *Frazin*, 413 B.R. at 313 (citing *Varner*, 218 S.W.3d at 69–70).

21. For the same reason, many of the legal services performed in this case simultaneously advanced HDMS's defense of the groundless DTPA claims and the pursuit of its breach of contract claim against Cypress for selling pre-chambers in violation of the Settlement Agreement. Accordingly, those fees are so intertwined that they cannot be segregated. *Id*. Nevertheless, where discrete legal services were performed that advanced HDMS's breach of claim for the sale of pre-chambers but did not advance its defense of the DTPA claim, those fees and expenses were segregated. For example, all fees and expenses for legal services performed in relation to the breach of contract claim for the sale of pre-chambers after May 3, 2017 are not included in the amount of fees HDMS seeks to recover because HDMS was no longer defending against the groundless DTPA claims at that point, even though there was substantial work required after that date to

recover the attorneys' fees HDMS incurred on account of Cypress's groundless DTPA claim.

22.        Additionally, all other fees and expenses incurred for legal services relating only to unrecoverable claims were also segregated, such as those relating solely to HDMS's claims for money had and received, unjust enrichment, and breach of contract by filing this lawsuit were removed, in addition to all fees associated with settlement efforts.    In total, out of the $450,887.63 in legal fees and expenses that HDMS has incurred though September 30, 2017 in this case— a case that should have never been brought — the total amount incurred in defending against the groundless DTPA claims is only $322,928.56, which was conservatively calculated to avoid any fees that could and should be segregated.

23.        For the sake of clarification, the spreadsheet attached as Exhibit A-4, identifies all legal services performed by counsel for HDMS in this lawsuit and identifies whether the fees incurred for those services are recoverable or have been segregated because they are unrecoverable.  The spreadsheet indicates whether the services related solely to the defense of the groundless DTPA claims or were so intertwined with unrecoverable claims (because they simultaneously advanced the DTPA defense and an unrecoverable claim) that they cannot be segregated.[6]

---

[6] Notably, HDMS does not include in the fees and expenses for DTPA defense any fees or expenses incurred after May 3, 2017—the date the Court dismissed the DTPA claims, even though some time was expended on Cypress's motion to reconsider, which sought to revive its

24.       HDMS also seeks recovery of any fees and expenses it will incur if Cypress appeals this Court's determination that its DTPA claim was groundless.  I estimate that HDMS will reasonably incur an additional $50,000 in attorneys' fees and expenses should Cypress appeal the Court's ruling that Cypress's DTPA claim was groundless or brought in bad faith.

25.       I personally reviewed the monthly reports of fees and expenses before billing statements were rendered to the client, and exercised billing judgment to make downward adjustments in fee charges where I believed them appropriate in light of the services rendered.  Those downward adjustments totaled $8,412.69 with respect to work related to the defense of the groundless DTPA claims. HDMS has agreed to pay Porter Hedges for all of the charges for work described in this Declaration.  Moreover, additional time was spent by Porter Hedges' lawyers, paralegals and law clerks in defense of the Cypress claims against HDMS that was not recorded, and some time that was recorded was removed from statements rendered to HDMS, and thus not charged.  I personally did not record all of the time I spent assisting Ms. Holcombe and Ms. Godsey in HDMS's defense of Cypress's groundless DTPA claims.  My review of the billing statements reveals numerous instances in which I provided assistance to Ms. Holcombe and Ms. Godsey, yet billed no time or reduced time of my own to HDMS.

---

groundless DTPA claim, and in establishing the attorneys' fees HDMS incurred defending against Cypress's groundless DTPA claims.

## Reasonableness of Fees and Expenses

26.        Looking to the Fifth Circuit's "two-step process," which initially

considers the reasonableness of both (1) the hours expended on the litigation and

(2) the hourly rates for the participating lawyers and paralegals, and then multiplies

the two, in my opinion, the fees Porter Hedges has charged HDMS are reasonable.

*See Desert Rock Energy Co., LLC v. United States EPA,* No. H-08-872, 2009 U.S.

Dist. LEXIS 89674, at *8-9 (S.D. Tex. Sept. 29, 2009) (citing *Louisiana Power &*

*Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995)).

## The Hours Expended on the Litigation Are Reasonable

27.        I have been the partner in charge of representing HDMS throughout

this litigation.  I have been assisted by other lawyers and paralegals whose time is

also included in Table 1.  They include:

> a. Ms. Stephanie Holcombe has worked on this matter with me from
> beginning to end.  Ms. Holcombe is a senior associate of Porter
> Hedges.  Ms. Holcombe's resume is attached in Exhibit A-1.
>
> b. Ms. Jamie Godsey has also assisted on this matter from beginning
> to end.  She is a second-year associate of Porter Hedges.  Ms.
> Godsey's resume is attached in Exhibit A-1.
>
> c. Ms. Mitzie Webb, a paralegal with over 20 years of experience
> prior to working on this matter, has provided paralegal assistance.
>
> d. Carey Sakert, Kristen Dvorak, Justin Jenkins, and Jared Richards
> are electronic discovery litigation support professionals.
>
> e. Katelyn Cox and Sarah Callahan performed work as summer law
> clerks.
>
> f. Ruth Tucker provided paralegal assistance.

28.         Over 95 percent of the billed lawyer time devoted to HDMS's defense of the DTPA claim against it was provided by Ms. Holcombe and Ms. Godsey.  All of the billed partner time—which accounts for only 5 percent of the total time— was provided by me.   In my experience in litigation involving the level of complexity and difficulties that were in fact imposed by the circumstances described above, it is very unusual for the percentage of partner time to be so low. Other associates, paralegals, and law clerks of Porter Hedges assisted on particular projects for the litigation as needed.  Not included is time for regular secretarial and other strictly administrative work that, while essential to support the representation of HDMS, was not billed separately to HDMS.  The time included in Table 1 for paralegals and law clerks was for work directly related to the defense of Cypress's groundless DTPA claims or claims that were inextricably intertwined with it, not secretarial or administrative duties.

29.         I believe the staffing of the work for HDMS and the hours expended by those individuals were reasonable and appropriate.

### The Hourly Rates for the Individual Billers Are Reasonable

30.         Porter Hedges usually billed HDMS for its services in the month following the month in which the services were rendered.  Rates charged for the individual lawyers and paralegals are summarized in **Exhibit A-6** to this Declaration.  Based on my experience, these rates are reasonable for work of this

kind for law firms whose lawyers practice in the United States District Courts for the Southern District of Texas and the United States Court of Appeals for the Fifth Circuit during the periods in which this work was performed.   These rates are comparable to the rates Porter Hedges has charged to other clients for similar work by the same professionals who worked on the representation of HDMS in this matter.   These rates charged in 2015-2017 by Porter Hedges also compare favorably to the 2007 rates reported in *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 586 F. Supp. 2d 732 (S.D. Tex. 2008).  *See also Desert Rock Energy,* No. H-08-872, 2009 LEXIS 89674 at *8-9 (S.D. Tex. Sept. 29, 2009) (finding that party seeking fees could rely on the billing rates chart for area firms used in *Newby* as evidence of reasonable rates).   In the marketplace for such legal services, rates have risen significantly between 2007 and 2015-17.   A chart reflecting the 2007 rates in *Newby* compared to the 2015-17 rates charged by Porter Hedges to HDMS is attached as **Exhibit A-7**.

### Adjustments – *Johnson* Factors

31.       In my opinion, the fees sought do not require either upward or downward adjustment, taking into account the factors described in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d at 323–24, and *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 586 F. Supp. 2d at 755, among others.  Those factors are discussed below.

### The time and labor required

32.     For the reasons explained above, the number of hours expended by the individuals at Porter Hedges to represent HDMS in this matter was reasonable. *See also* Exhibits A-4 & A-5.

### The novelty and difficulty of the questions

33.     This case involved a number of procedurally complex issues, and required extensive work to develop detailed facts for presentation in support of HDMS's motion for summary judgment on Cypress's DTPA claim. The Court granted that motion   The amount of time and the rates charged fairly and reasonably reflect the novelty and difficulty of the questions at issue.

### The skill requisite to perform the legal service properly

34.     Porter Hedges utilized professionals of appropriate levels of experience for the tasks required, including a mix of partner, of counsel, associate, paralegal, and law clerk time, with billing rates commensurate with their skills and experience. *See* Exhibit A-4.

### The preclusion of other employment by the attorney due to acceptance of the case

35.     To the extent the professionals at Porter Hedges were working on this matter, doing so reduced their availability to work on other matters.  This work did not otherwise inhibit their opportunity to work on other matters.

### *The customary fee*

36.         As explained above in paragraph 30, the fee charged by Porter Hedges to HDMS was customary in the community.  *See also* Exhibits A-6 & A-7; *Newby*, 586 F. Supp. 2d at 780.

### *Whether the fee is fixed or contingent*

37.          Porter Hedges charged fees principally based upon the billing rate for the professionals working on the matter and time devoted, subject to downward adjustments.

### *Time limitations imposed by the client or the circumstances*

38.         No company enjoys being accused of deceptive trade practices.  For a small company such as HDMS seeking to develop customer loyalty and faith in new products, the unresolved DTPA claims brought groundlessly by Cypress, which is a competitor in the same industry, were especially onerous. HDMS had no choice but to defend itself against these claims.  Settlement was not an option. Cypress had ignored the previous Settlement Agreement that should have eliminated any DTPA claim by Cypress.  Cypress then refused to show up for a settlement conference it had previously agreed to attend.  Because it was important to HDMS to dispose of the DTPA claims Cypress meritlessly asserted, HDMS required prompt, aggressive, efficient, and diligent attention by HDMS's counsel. The hourly rates charged by Porter Hedges fairly reflected this factor.

### The amount involved and the results obtained

39.         Cypress asserted claims of more than $450,000 in damages, plus attorneys' fees and punitive damages against HDMS at a time when HDMS had recently begun marketing a valuable new product and had secured contracts with customers that could not proceed while this litigation was pending.  The Court dismissed the groundless DTPA claims by summary judgment on May 3, 2017.  HDMS's legal fees were reasonable under these circumstances.

### The experience, reputation, and ability of the attorneys.

40.         The billing rates Porter Hedges charged were reasonable, given the experience, reputation, and ability of the professionals working on the matter and the resources required.  The experience, reputation, and ability of the professionals were appropriate for the tasks that they each undertook in this representation.

### The "undesirability" of the case

41.         This was not a significant factor for HDMS's fees.

### The nature and length of the professional relationship with the client.

42.         This lawsuit has been Porter Hedges' only engagement for HDMS to date.

*Awards in similar cases*

43.　　　As described in paragraph 30 above, the 2015-17 hourly rates charged by Porter Hedges are within the range and often lower than the hourly rates in 2007 that the Court approved for lawyers of similar experience in *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 586 F. Supp. 2d at 780.  *See* Exhibits A-6 & A-7.

**<u>Expenses of Attorneys and of Defense Paid by HDMS</u>**

44.　　　Attached as **Exhibit A-8** to this Declaration is a summary of the expenses of Porter Hedges billed to HDMS  through May 31,2017, totaling $21,713.42.  In reviewing the amount of time through May 31, 2017 that was attributable to defending against the DTPA claim, I estimate that roughly 85% of the total time spent was attributable to defending the DTPA claim and have applied that percentage to the total amount of expenses.  Therefore, HDMS seeks $18,456.41 in expenses related to the DTPA defense.  HDMS is required to reimburse billed expenses of Porter Hedges under the engagement agreement for this representation.  All of Porter Hedges's billed expenses were reasonable for representation of this kind.

45.　　　I declare under penalty of perjury that the facts stated in this document are true and correct."

**Executed** on October 13, 2017.

                             Neil Kenton Alexander